IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| OLIVER J. HIGGINS, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | Case No. 1:10-cv-01316-JDT-egb |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

## REPORT AND RECOMMENDATION

Before the Court is the March 18, 2014 referral from Judge James D. Todd for an evidentiary hearing to resolve Movant's claim that his attorneys failed to advise him adequately about his decision to plead not guilty and risk a jury trial. (*See* D.E. 1-1 at 3-6.) Specifically, the evidentiary hearing was to address the timing and content of any plea offers and whether, at the time that Movant chose to reject the offer and proceed with his suppression motion, he was aware of the evidence available to the Government and his exposure to a mandatory life sentence as a career offender.

After appointment of counsel, the hearing was held on September 25, 2014. Movant's attorney, Jon York, stated that Movant felt that he was not adequately advised of plea offers, not advised of the potential risk nor or the potential life sentence. Movant had three different attorneys through his proceedings, Steve Farese, Sr., Daniel Taylor, and Colin Morris[1].

The Court first heard from Mr. Farese, who has been licensed to practice law in Tennessee since 1984. Mr. Farese testified that he felt that Movant's case was "dangerous and

---

[1] Farese and Taylor were retained by Defendant. Morris was a CJA appointment.

severe" once the federal government became involved, and recalled that he went over the guidelines with Defendant regarding the firearm charge and also how Defendant's criminal history affected his points. He told Defendant that the government could choose an enhancement which could result in a life sentence. Mr. Farese advised Defendant that his guidelines were so high that he was going to have to cooperate. Defendant made clear that he would not cooperate with the government. Mr. Farese communicated the government's offer in person at FCI Mason, but Defendant's response was that it really was not a deal. Defendant wanted a cap, so Mr. Farese attempted a counteroffer but the Assistant United States Attorney, Jerry Kitchen, could not give a cap. Mr. Farese advised Mr. Kitchen that Defendant may have to file a suppression motion, and Mr. Kitchen advised that if that motion was filed, all deals were off the table. Mr. Farese testified that he relayed this information to Defendant and Defendant stated that it was no deal, advised him to talk to two witnesses, and to proceed with filing the motion to suppress. Mr. Farese testified that he stated that it was a bad move, but also felt like his communication and relationship with Defendant was breaking down, as Defendant was unsatisfied. Defendant released Mr. Farese in August 2006. Mr. Farese recalled discussing the life sentence as a worst case scenario, but they did not spend a lot of time discussing it. Mr. Farese also testified that it was his practice to always sit down with a defendant in person and discuss any plea offers, as well as discovery materials.

 Mr. Farese testified that he never gave Defendant a specific amount of time to be served when discussing any possible deals, because he did not have one to give. Mr. Farese also stated that Defendant knew he had the opportunity to cooperate. Mr. Farese explained to Defendant that if the motion to suppress was unsuccessful, Defendant was a "dead duck" and subject to severe penalties. Mr. Farese explained to him many times that, in his opinion, the best option was to

cooperate and receive a reduction for doing so, but Defendant refused to cooperate. Mr. Farese felt that even though they did not spend most of their discussions on it, that Defendant was advised that if an enhancement was filed by the government he could receive a life sentence.

Mr. Taylor, who has been practicing criminal law since 1999, was the next to testify. Mr. Taylor recalled that he discussed the evidence, including the search of Defendant's residence, in detail with Defendant. Based on the search warrant and the discovery material, Mr. Taylor filed the motion to suppress. Mr. Taylor expressed to Defendant before filing that it was not a sure shot and was a close call. When the government response was filed, Mr. Taylor told Defendant their motion to suppress was weak. Mr. Taylor recalled that they talked about the possibility of an enhancement more than once and that there was the possibility of a life sentence. Mr. Taylor specifically recalled confirming the qualifying prior convictions with Hardeman County.

During cross-examination, Mr. Taylor reiterated that he reviewed strengths and weaknesses of the case with Defendant and reviewed discovery including Defendant's criminal history. Mr. Taylor stated that he told Defendant he could be subject to an enhancement and that it could enhance a career offender's sentence to life in prison. The two men discussed the option to fight and what effect it could have on the case, and the option to plea. Defendant wanted to pursue the motion to suppress. Mr. Taylor stated that once he had the discovery material, he talked with Defendant at every meeting at the prison regarding the possibility of enhancement. They also discussed that there was no plea on the table, but that they could pursue it. Mr. Taylor stated that he advised Defendant of every conversation with the Assistant United States Attorney. AUSA Kitchen, told Mr. Taylor that if a motion to suppress was pursued and a jury trial was had, that he would pursue the enhancement and Mr. Taylor relayed that to Defendant. Mr. Taylor felt that Defendant was aware of his exposure to a possible life sentence.

Mr. Morris was also called as a witness. Mr. Morris was appointed after Defendant dismissed Mr. Taylor. Seventy percent of Mr. Morris' practice is criminal. Mr. Morris reviewed the discovery materials and was aware of Defendant's prior convictions. Mr. Morris told Defendant that without cooperation or a guilty plea, that he was facing the possibility of life in prison. Mr. Morris argued the motion to suppress in the case that Mr. Taylor had prepared, but before doing so asked Mr. Kitchen if there was anything they could do to resolve the case. There was no plea on the table. Mr. Morris advised Defendant that he could plead to his indictment and that if he did not do so he would not receive any consideration. Mr. Morris told Defendant if he pled instead of arguing he would be in a better position.

Mr. Morris stated that he recalled telling Defendant that there was a possibility of life in prison. Mr. Morris also stated that when he came into the case, everything was in motion and there was no plea offer extended by the government. He tried to negotiate with the government but there was no way around the mandatories. Mr. Morris stated he worked for Defendant to the best of his ability despite their relationship being strained due to Defendant being unhappy with his representation. Mr. Morris did not recall discussing the enhancement with Defendant when it was filed the day before trial, but he did recall advising Defendant about the possibility of a life sentence. Mr. Morris felt like it was always Defendant's intention to go to trial. He stated after Defendant lost the motion to suppress, he went to the Assistant United States Attorney and Mr. Kitchen would not offer him any kind of plea deal. Defendant did not want to plead to the indictment so he had to go to trial.

Defendant, Oliver Higgins, next testified. He stated that Mr. Farese never presented him with the plea offer he spoke about during the instant hearing. Defendant also stated that he refused the only offer Mr. Farese presented him with because he was not going to cooperate with

4

the government, and that Mr. Farese knew that. Defendant stated that from the beginning to the end of their relationship, he made it clear to Farese that he would not cooperate with the government. Defendant disputed several parts of Mr. Farese's testimony, including that he had reviewed the discovery with him and that Mr. Farese told him he could face a life sentence. Defendant also disputed the testimony of Mr. Taylor and Mr. Morris. Defendant testified that he wanted to use his own motion to suppress but that Mr. Morris insisted on using Mr. Taylor's, and that Mr. Morris stated that they had a high likelihood of success on the motion and never discussed what would happen if they lost.

Defendant stated that all the lawyers misled him, and he would have rather had thirty years in prison than life in prison. He said no lawyers advised him that he was facing a life sentence. Defendant stated he was unaware that he could plead guilty, and that he was aware of the charges but not the possible penalties. Defendant testified that Mr. Ferese told him he could only plead guilty if he cooperated. Defendant also reiterated that he was not going to cooperate with the government. He stated that inmates did tell him about the possibility of the enhancement, and that is why he prepared a motion to challenge, but that he never knew that the enhancement was actually filed against him. Had he known, Defendant stated he would not have gone to trial.

Finally, Mr. Kitchen testified. He stated that at Defendant's initial appearance it was read in court that Defendant would receive not less than ten years, not more than life in prison.[2] He stated that any plea negotiation was contingent upon Defendant's cooperation but that Defendant refused to cooperate. Therefore, there were no new offers other than he could plead guilty as charged. Mr. Kitchen testified that he had advised Mr. Taylor that Defendant was potentially

---

[2] A review of the recording of Defendant's Initial Appearance confirms that this was the case.

facing a mandatory life sentence. In fact, he stated that he informed every attorney that he would file the enhancement. Every attorney advised Mr. Kitchen that Defendant would not cooperate with the government.

Based on the testimony proffered, the Magistrate Judge finds that any plea offers were relayed to Defendant by his counsel. All plea offers were contingent upon Defendant's cooperation with the government, and Defendant himself has testified that he would not cooperate. The Magistrate Judge also finds that at the time Movant chose to reject the offer and proceed with his suppression motion, he was aware of the evidence available to the Government and his exposure to a mandatory life sentence as a career offender. The Magistrate Judge finds the testimony of Mr. Farese, Mr. Taylor, Mr. Morris and Mr. Kitchen credible in this regard, and does not find Defendant's testimony that he was unaware of the risk of a mandatory life sentence to be credible. The Magistrate Judge recommends that Movant's Motion be denied.

Respectfully submitted this 1st day of October, 2014.

<u>s/Edward G. Bryant</u>
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT AND RECOMMENDATIONS MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT AND RECOMMENDATIONS. 28 U.S.C. § 636(b)(1). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**